IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CECORR, INC. d/b/a VISTA
CORRUGATED, INC., an Indiana
Corporation,

       Plaintiff,

v.                                              CIV No. 00-705 JC/DJS

GARLAND & LOMAN CONSTRUCTION, INC.,
a New Mexico Corporation; GERALD CHARLES
LUNDEEN, a New Mexico resident;
LUNDEEN and ASSOCIATES, INC., a
New Mexico corporation; DAVID
BOLLSCHWEILER, a New Mexico
resident; and BOLLSCHWEILER
ENGINEERING, a New Mexico sole
proprietorship,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of 1) Cambro Construction, Inc.'s Motion for Partial Summary Judgment, filed April 4, 2001 (*Doc. 115*) and 2) CeCorr's Motion for Summary Judgment on Garland & Loman's Counterclaim, filed September 1, 2001 (*Doc. 160*). The Court has reviewed the motions, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds that Cambro's motion for partial summary judgment is moot and is therefore denied. The Court further finds that CeCorr's motion for summary judgment is not well taken and is thus denied.

**I.**       **Background**

The issue before this Court arises out of a suit in which CeCorr claims, among other things, that Garland & Loman breached its contract with CeCorr due to faulty construction of a corrugated paper plant in Santa Teresa, New Mexico. Plaintiff states that, through no fault of its own, Garland & Loman negligently and improperly designed the roof and the exterior concrete, and failed to properly compact the subsurface soil beneath the exterior concrete. *See* Complaint, filed May 15, 2000 at 9-10 (*Doc. 1*). These deficiencies, CeCorr claims, resulted in a facility wholly inadequate for its purposes.

Both parties agree that CeCorr prepared a contract to build this facility entitled "Abbreviated Form of Agreement Between Owner and Contractor," dated May 16, 1996. The contract explicitly incorporates a letter by Mr. Garland dated July 8, 1996, that includes an application for a pay request. *See* Garland & Loman's Memorandum in Opposition to the Plaintiff's Motion for Summary Judgment (Garland & Loman's Memo), filed October 15, 2001 (*Doc. 164)*. In its counterclaim, Garland & Loman asserts that CeCorr is ultimately responsible for the NMGR tax the state forced it to pay. The counterclaim alleges that after Garland & Loman performed various services under the contract, CeCorr determined that because it was utilizing monies from a county industrial revenue bond for the project, it did not owe NMGR tax. CeCorr thus obtained a non-taxable transaction certificate (NTTC) indicating its exemption. After obtaining this certificate from CeCorr, Garland & Loman did not pay NMGR tax to the state or request CeCorr to pay it. *See* Garland & Loman's Memo at 5 (*Doc. 164*).

On or about April 29, 1997, Garland & Loman applied for final payment on the project, which CeCorr paid. CeCorr argues that under Article 15.5 of the contract, Garland & Loman's application for final payment waived the company's claim for payment of the NMGR tax. *See* CeCorr,

Inc.'s Memorandum in Support of its Motion for Summary Judgment on Garland & Loman's Counterclaim (CeCorr's Motion), filed September 24, 2001 at 6 (*Doc. 159*). Sometime after final payment, New Mexico Taxation and Revenue Department determined that the NTTC was improperly issued and insisted that Garland & Loman pay the required taxes plus interest and penalties. Garland & Loman requested that CeCorr pay the past due taxes including the interest and penalties assessed by the state, but CeCorr refused, claiming that Articles 9.5 and 15.5 of the contract place that imposition squarely upon Garland & Loman.

## II.  Standard of Review

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *See id.* at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *See Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *See Gross v.*

3

*Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). An issue is material only if its resolution could affect the outcome of the action. *See Liberty Lobby*, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *See id.*. The standard for granting a summary judgment is the same as the standard for a directed verdict. *See Celotex Corp.*, 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *See Matsushita*, 475 U.S. at 597.

### III. Analysis

The primary goal for a court when interpreting a contract is to determine the intention of the parties. *See Quantum Corp. v. State Taxation and Revenue Dept.*, 1998-NMCA-10. Moreover, a court is required to enforce a contract's clear language unless it determines that the contract, or one of its contested clauses, is ambiguous. *See Montoya v. Villa Linda Mall, Ltd.*, 110 N.M. 128, 129 (1990). "Ambiguity is best described as a "proxy for describing lack of clarity in the parties' expressions of mutual assent." *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 509 n.2, 817 P.2d 238, 243 n.2 (1991).

#### A. Article 15.5

After CeCorr determined that it did not owe NMGR tax and submitted to Garland & Loman the non-taxable transaction certificate (NTTC) in verification thereof, Garland & Loman did not include NMGR tax in its statements to CeCorr. *See id*. Yet, after the project's completion and CeCorr's final payment to Garland & Loman, the New Mexico Taxation and Revenue department determined that the NTTC was improper and required Garland & Loman to pay the tax plus penalties and interest. *See* Garland & Loman's Counterclaim at 8 (*Doc. 15)*. Garland & Loman sought

4

reimbursement from CeCorr, but CeCorr refused citing Section 15.5 of the Agreement.

Specifically, CeCorr argues that under Section 15.5 of the Agreement, Garland & Loman waived its rights to such reimbursement. The section states:

> The making of final payment shall constitute a waiver of claims by the Owner except those arising from:
> 1. liens, claims, security interests or encumbrances arising out of the Contract and unsettled;
> 2. failure of the work to comply with the requirements of the Contract Documents; or
> 3. terms if special warranties required by the Contract Documents.
>
> Acceptance of final payment by the Contractor...shall constitute a waiver of claims by the payee except those previously made in writing and identified by that payee as unsettled at the time of final Application for Payment.

The Court finds this language to be unambiguous. There is a material issue of fact, however, regarding whether Garland & Loman waived its right to payment under this clause. To waive a known right, the party must knowingly and intentionally relinquish that right. *See Jackson Nat'l Life Ins. Co. v. Receconi*, 113 N.M. 403, 412 (1992). In this case, CeCorr does not sufficiently state that Garland & Loman knowingly and intentionally gave up its rights under Article 15.5.

Garland & Loman cites to various exhibits indicating that it originally intended to include, and then did include, NMGR tax in its price until CeCorr presented it with the NTTC. For instance, in his deposition, J. Robinson, general manager of Vista Corrugated (the internal operating division of CeCorr that was responsible for the facility), admits that he knew that Garland & Loman would add NMGR tax to its proposal if CeCorr did not obtain the NTTC. *See* Garland & Loman's Counterclaim, Exhibit 8, 32-35 (*Doc. 15*); *see also* Garland & Loman's Counterclaim, Exhibit 1 (*Doc. 15*) (original proposal by Garland & Loman indicating that the company included NMGR tax in its bid). J. Robinson also states that prior to the NTTC, CeCorr included NMGR tax in its payments to Garland

5

& Loman. *See id*. Yet, upon obtaining the NTTC, Garland & Loman ceased including the NMGR tax in its statements to CeCorr. Due to CeCorr's issuance of the NTTC, Garland & Loman could not have intentionally waived its rights to the tax, as Garland & Loman relied on the NTTC, which specifically exempted the project from the NMGR tax. *See* Garland & Loman's Counterclaim at 8 (*Doc. 15)*. Because the state did not determine the NTTC to be improvidently issued until after CeCorr's final payment to Garland & Loman, the Court finds that Garland & Loman did not waive its rights under Article 15.5.

**B.     Section 9.5**

CeCorr claims that Article 9.5 is an unambiguous statement regarding Garland & Loman's liability to pay all taxes, including NMGR tax, to the state. In pertinent part, the article states:

> Unless otherwise provided in the Contract Documents, the Contractor shall pay sales, consumer, use, and other similar taxes which are legally enacted when bids are received or negotiations concluded....

*See* Complaint, Exhibit A at 6 (*Doc. 1*).

CeCorr argues that because there is nothing explicit in the contract stating that it is responsible for the NMGR tax, Garland & Loman must shoulder the burden alone. *See* CeCorr's Motion for Summary Judgment at 9 (*Doc. 159*). Garland & Loman contends that, although there is nothing specific in the contract regarding NMGR tax, the original intent of the parties was for the NMGR tax to be included in the price. Furthermore, Garland & Loman claim that Article 3.1 of the contract incorporates a proposal, dated April 29, 1996, that includes NMGR tax in the base bid. *See* Garland & Loman's Memo at 11-12 (*Doc. 164)*.

When courts are determining whether a term or expression in a contract is vague, they may look to extrinsic evidence surrounding the formation of the contract and to any relevant usage of

6

trade, course of dealing or course of performance. *See C.R. Anthony*, 112 N.M. at 509, 817 P.2d at 243; 2 E. Farnsworth, *Farsnworth on Contracts* § 7.12a at 279 (1990) ("In determining whether contract language is ambiguous, a court in not limited to the face of the contract itself."). In this case, Garland & Loman produces ample evidence suggesting that it intended for NMGR tax to be included in the contract price. For instance, Garland & Loman's initial proposal, dated February, 24, 1996, includes cost + NMGR tax. *See* Garland & Loman's Response, Exhibit 1 (price excludes NMGR tax). More importantly, Article 3.1 states:

> The owner shall pay the Contractor... the Contract sum of Two Million Two Hundred Seven Thousand Six Hundred Sixty-seven and No/100, subject to additions and deductions as provided in the Contract Documents. *See letter from contractor dated July 8, 1996, attached hereto and incorporated herein.*

*See* Complaint, Exhibit A at 2 (*Doc 1*) (emphasis added). Attached to the July 8 letter is a pay request Application No. 3 that includes NMGR tax as part of the contract price. *See* Garland & Loman's Response, Exhibit 5 *(Doc. 164)*.

Due to these two exhibits, among others, Garland & Loman sufficiently asserts that there is a material issue of fact regarding the meaning of Article 9.5. The Court, therefore, finds that Garland & Loman has sufficiently met its burden in establishing that there is a material question of fact regarding whether the language in this article is ambiguous.

### III. Conclusion

To overcome a motion for summary judgment, the non-movant must sufficiently assert that there is a genuine issue of material fact that must be decided by the court. In this case, Garland & Loman adequately present such facts, as their briefs and exhibits indicate that there is a disputed material issue regarding whether they waived their rights under Article 15.5 and 9.5.

7

Wherefore,

IT IS ORDERED that Defendant Cambro Construction, Inc's Motion for Partial Summary Judgment, filed April 4, 2001 (*Doc. 115*) is denied as moot.

IT IS ORDERED that CeCorr's Motion for Summary Judgment on Garland & Loman's Counterclaim, filed September 1, 2001 (*Doc. 159*) is denied.

Dated December 11, 2001.

                                                                             
_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:
    David W. Bunting
    Rodey, Dickason, Sloan, Akin & Robb, P.A.
    Albuquerque, New Mexico 87103

Counsel for Defendants:
    Defendant Garland & Loman
    Matthew P. Holt
    Holt & Babington, P.C.
    Las Cruces, New Mexico 88004
    *and*
    Thomas A. Sandenaw, Jr.
    Sandenaw, Carrillo & Piazza, P.C.
    Las Cruces, New Mexico 88005

    David Bollschweiler, *pro se*
    700 West Chestnut Ave.
    Las Cruces, New Mexico 88005

    Defendant Lundeen & Associates, Inc.
    Robert R. Fuentes
    Fuentes & Assoc., P.C.
    Rio Rancho, New Mexico 87174

    Defendant Cambro Construction
    Michael F. Menicucci, Esq.
    Albuquerque, New Mexico 87197